

**HOGUET NEWMAN**
**REGAL & KENNEY,**LLP

One Grand Central Place
60 East 42nd Street, 48th Floor
New York, New York 10165

Tel   212.689.8808
Fax   212.689.5101
www.hnrklaw.com

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/23/2022

On hhechtkopf@hnrklaw.com

May 20, 2022

**VIA ECF**

The parties are directed to conduct the deposition and mark any questions/ answers for a future ruling. The parties are reminded that discovery must be relevant to the claims and defenses and proportional to the needs of the case. The Court will address any remaining discovery and any issues that arose during the deposition at the telephonic conference currently scheduled on Tuesday, May 31, 2022 at 3:45 p.m.

Honorable Katharine H. Parker
United States Magistrate Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007

SO ORDERED:

*Katharine H. Parker*
HON. KATHARINE H. PARKER
UNITED STATES MAGISTRATE JUDGE
5/23/2022

Re:   **Amanda Cintron v. Albert Einstein College of Medicine, et al., Case No. 1:21-cv-06256 (JGK) (KHP)**

Dear Judge Parker,

We represent Defendants Albert Einstein School of Medicine ("Einstein) and Joseph Ben-Ari in the above matter. We write to request a conference to discuss Defendants' anticipated motion for a protective order pursuant to FRCP 26(c), to prevent topics for the FRCP 30(b)(6) deposition noticed by Plaintiff for May 24, 2022. We certify that counsel for the parties met and conferred by telephone about this issue on May 19, 2022, and were unable to reach resolution.

**Plaintiff Has Been Unable to Sufficiently Amend Her 30(b)(6) Deposition Notice**

On January 5, Plaintiff served Einstein with a 26-topic Rule 30(b)(6) deposition notice. After Einstein objected by letter on January 21, Plaintiff purported to narrow the topics in Schedule A with an amended notice on April 7. The amended notice did not sufficiently amend the improperly noticed topics, and Einstein again objected by letter on April 14 only to receive another insufficiently amended notice on May 10. The parties could not reach agreement on May 19,[1] compelling Einstein to bring this motion for protective order to the Court.

**Plaintiff Seeks Improper 30(b)(6) Testimony Through Broad & Misdirected Topics**

Specifically, Einstein seeks a protective order as to Topics 3, 6-7, 9-13, 15-21, and 24.[2] Topics 9-11 and 24 seek broad, irrelevant testimony geared at an improper fishing expedition for comparators that Plaintiff has the burden to identify. Topics 3, 6, 7, 12, and 13 seek testimony on

---

[1] Plaintiff served two additional amended versions of the notice on May 19, 2022. The final version of the notice is attached hereto as Exhibit A. The points herein were not mooted by this notice.

[2] Einstein is prepared to have a corporate witness testify about topics 1, 2, 4, 5, 8, 14, 22 and 23 (as modified in the last version of the notice).



topics for which a 30(b)(6) witness is not the appropriate source. Finally, Topics 15-21 are an impermissible attempt to obtain "discovery on discovery" when no spoliation is at issue.

**Overbroad and Burdensome Topics Searching for Comparators (Topics 9-11 & 24).** These topics are part of Plaintiff's ongoing attempt to search for comparators among Einstein employees who are not similarly situated to her. Each of these topics is so overbroad that the preparation required for a corporate witness to testify about them would impose unreasonable expense and burden upon Einstein. All four topics seek information about an unmanageably vast scope of employees reporting to different managers through Einstein's large (1,000+ employee) organization—*i.e.*, employees with an "administrator" job title,[3] and all employees who reported to Joseph Ben-Ari, from January 9, 2017 to the present.[4] There is no apparent relevance between the vast majority of these employees, most of whom worked for different managers or in entirely different circumstances than the Plaintiff, and the Plaintiff's termination.[5]

These Topics would also require Einstein to undertake to obtain vague information about this broad swath of employees, including: which of those employees was ever "disciplined," including informal discipline such as verbal counseling or informal emails (Topic 9); Einstein's "goals, expectations, and performance" for these employees (Topic 10); "[a]ll instances in which [these employees]… were failing to meet the goals and expectations of their job position" (Topic 11); and "all concerns of disability discrimination and retaliation that have been raised" by these employees (Topic 24). It would be impossible for any deponent to testify to, for example, every time an employee failed to meet a goal or expectation—such occurrences could be fleeting or temporary and may not have been documented at all. Testimony about "informal discipline" is just as difficult. Mr. Ben-Ari testified that frequently the first disciplinary step in his department would be a verbal conversation with an employee, and Mr. Cancellieri confirmed that this is common across departments at Einstein.

Compounding the problems caused by this overbreadth is the fact that these Topics unjustifiably seek employees' sensitive personal information. Even assuming other employees complained of disability discrimination and/or retaliation, for example, the existence of those claims in a large organization over a five-year period of time is not likely to be relevant to the claims of disability discrimination by a short-term employee who was terminated for inability to do her job or get along with her manager—yet disclosing the identity of such complaints would be to reveal private information given in a confidential setting by third parties to this case.

**Cumulative or Misdirected Topics (Topics 3, 6-7, & 12-13).** Topics 3, 6, 7, 12, and 13 are misdirected to a corporate witness when testimony would be best obtained elsewhere, thereby imposing undue burden on Einstein. Topics 3, 6, 7, and 13—about Plaintiff's concerns,

---

[3] There are 65 employees at Einstein with either title "Administrator" or "Administrator" in their job title.
[4] Mr. Ben-Ari did not become the head of the facilities department until April 2019, while the proposed time frame of the topic goes back to January 9, 2017.
[5] Mr. Ben-Ari testified that he supervises approximately 80 individuals within his chain of command, including both union and non-union staff, and individuals involved in plumbing, electrical, carpentry, and other positions related to facilities. *See* Exhibit B – Facilities Management Organization Charts.

Hon. Katharine H. Parker
May 20, 2022
Page 3



performance, and interactive dialogue at Einstein, and her termination from her position—are cumulative of deposition testimony already (and/or soon to be) taken from the individuals who were directly involved in those issues. This is not a situation where no witness is willing to testify about a topic and the only way to get the necessary information is from a corporate designee. Both Mr. Ben-Ari and Mr. Cancellieri testified about Plaintiff's performance-related issues, the decision to terminate Plaintiff, and the reasons underlying Plaintiff's termination; both also testified that neither was made aware of the Plaintiff's alleged disability before she was terminated, such that they were unable to engage in the interactive process with her as relevant decision-makers. Maria Tartarone's forthcoming deposition will undoubtedly involve similar questions, as Ms. Tartarone was Plaintiff's direct supervisor. Forcing these topics upon a corporate witness would require Einstein to try to prepare that witness through testimony already taken from individuals with personal knowledge about the issues, rendering the corporate testimony cumulative and unnecessarily burdensome. *See, e.g.*, *Dongguk Univ. v. Yale Univ.*, 270 F.R.D. 70, 74 (D. Conn. 2010) ("Where the notice seeks information which could more easily be obtained from another source, the court may refuse to allow that topic to be the subject of a 30(b)(6) deposition."). "30(b)(6) depositions can be used to test theories, challenge facts and fill in information gaps, but they cannot be used to reinvent the wheel by asking questions that have already been completely answered." *Id.* at 80.

Topic 12 (seeking "instances in which Ms. Cintron or any other individual . . . disclosed any condition(s) . . . to the Company") is similarly inappropriate for a corporate witness, because the Plaintiff herself is the party in possession of this information. Moreover, to the extent that the Plaintiff seeks information contained in notes, documents, paperwork, or forms, such existing documents have already been produced in discovery.

***Topics Seeking "Discovery on Discovery" (Topics 15-21).*** Topics 15-21 are an impermissible attempt to obtain irrelevant information about Defendants' data retention policies and practices, and explicitly seek information protected by attorney-client privilege and the work product doctrine. Plaintiff has not alleged (and has no reason to allege) that Defendants have spoliated evidence or have otherwise failed to properly preserve and/or disclose evidence in this case. There is therefore no reason to allow discovery on discovery, as the "information sought is collateral to the claims and defenses in this action," and is not justified by an "adequate factual basis." *See Winfield v. City of New York*, No. 15-CV-5236 (LTS) (KHP), 2018 WL 840085, at *6 (S.D.N.Y. Feb. 12, 2018).

For the reasons stated herein, Defendants request a protective order to prevent the 30(b)(6) deposition on Topics 3, 6-7, 9-13, 15-21, and 24. We thank the Court for its time and attention to this matter.

Respectfully submitted,

Helene R. Hechtkopf

EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CIVIL ACTION NO:
1:21-cv-06256

_____
                                        )
AMANDA CINTRON,                         )
                                        )
                Plaintiff,              )
                                        )
        v.                              )
                                        )
ALBERT EINSTEIN COLLEGE OF MEDICINE;    )
AND JOSEPH BEN-ARI                      )
                                        )
                Defendants.             )
_____ )

## NOTICE OF DEPOSITION ON DEFENDANT ALBERT EINSTEIN COLLEGE OF MEDICINE'S CORPORATE REPRESENTATIVE

PLEASE TAKE NOTICE that at **9:00am on May 24, 2022**, the Plaintiff Amanda Cintron ("Ms. Cintron" or the "Plaintiff") will take the deposition of Defendant Albert Einstein College of Medicine ("Einstein" or the "Defendant") through a corporate representative of the Defendant pursuant to the rules, procedures, and obligations of the Federal Rules of Civil Procedure 30(b)(6). In consideration of the COVID-19 pandemic, the Deposition shall take place by secure videoconference technology through Veritext, court reporters licensed in the state of New York, 1250 Broadway, Suite 2400, New York, NY 10001. The deposition will be recorded by stenographic means. The oral examination will continue until finished. You are invited to attend and cross-examine. The topics of the deposition are detailed herein.

## INSTRUCTIONS

The following instructions apply to the denotation of topics herein:

      A.      The use of the singular form of any word includes the plural and vice versa.

B.      The terms "or" and "and" should not be read exclusively so as to eliminate any part of any document request, but, wherever appearing, should be read as inclusively as possible. All uses of the conjunctive include the disjunctive and vice versa.

C.      With respect to topics seeking information forming the "basis" for a particular allegation, claim, conclusion, contention, or argument, shall be interpreted to pertain to all documents or information that form any part of the source of the <u>Defendant's</u> information <u>relating</u> to the alleged facts or legal conclusions (whether corroborating, elaborating, contradicting, or otherwise concerning such issues).

D.      The words "or," "and," "all," "every," "any," "each," "one or more," "including," and similar words of guidance, are intended merely as such, and should not be construed as words of limitation.  The words "or" and "and" shall include each other whenever possible to expand, not restrict, the scope of the Topic. The word "including" shall not be used to limit any general category or description that precedes it. The words "all," "every," "any," "each," and "one or more" shall include each other whenever possible to expand, not restrict, the scope of the Interrogatory.

E.      These Topics are intended to elicit as much information as possible concerning the issues, and to the extent any Topic could be interpreted in more than one way, you should employ the interpretation of the Topic most likely to encompass and elicit the greatest amount of information possible.

F.      Discovery is continuing and the <u>Plaintiff</u> reserves the right to supplement these Topics as necessary.

G.      No later than five (5) business days prior to the deposition referenced in this notice, <u>Defendant</u> is requested to disclose to <u>Plaintiff</u> the name and title of the corporate

2

representative(s) designated to represent <u>Defendant</u> pursuant to this deposition notice.  If

<u>Defendant</u> designates more than one corporate representative, then <u>Defendant</u> must indicate

which topics each such designated corporate representative shall testify regarding.

## **<u>DEFINITIONS</u>**

The following definitions shall apply to these Document Requests:

A.      The words "<u>Plaintiff</u>" and "<u>Ms. Cintron</u>" means Amanda Cintron, the

<u>Plaintiff</u> in the below referenced <u>Complaint</u>.

B.      The word "<u>Charge</u>" means the charge of discrimination filed by <u>Ms.</u>

<u>Cintron</u> with the New York City Commission on Human Rights (the "NYCCHR") and cross

filed with the United States Equal Opportunity Commission (the "EEOC") (NYCCHR No. M-

E-DO-20-86148-D and EEOC No. 16F-2020-0019C) and all allegations contained therein.

C.      The word "<u>Complaint</u>" means the Complaint filed by <u>Ms. Cintron</u> in the

United States District Court for the Southern District of New York (CA No.: 1:21-cv-06256).

D.      The words "<u>relate</u>," "<u>relates</u>," "<u>relating</u>," "<u>relating to</u>," and any variation

of the word "<u>relate</u>" means concerning, referring to, pertaining to, supporting, corroborating,

refuting, contradicting, reporting, embodying, establishing, evidencing, comprising, connected

with, commenting on, responding to, showing, describing, detailing, analyzing, reflecting,

presenting, constituting, and/or in any way involving.

E.      The words "<u>concern</u>" and "<u>concerns</u>" mean any formal or informal, verbal

or written, communication, expression, accusation, or report of discontent, objection, regret,

fear, outrage, discomfort, complaint, resentment, or grievance made to, or brought to the

attention of the Company, including but not limited to the Company's human resources department, any member of the Company's management (including any manager or supervisor), or to any other person or entity (including any third party, such as an ethics hotline or other third party agent, client, vendor, or service provider of or for the Company) that is designated, explicitly or implicitly, under Company practice or policy to constitute a recipient of concerns.

       F.     The word "Claims" means any and all complaints, civil actions, criminal actions, charges filed with a government entity, lawsuits, or any other legal proceedings.

       G.     The word "describe" means to provide a complete description and explanation of the facts, circumstances, analysis, opinion and other information relating to the subject matter of a specific interrogatory, as well as (i) the identity of each person or entity involved related to, or having any knowledge of any fact or opinion that relates to, what is so described, (ii) the identity of each document evidencing the answer or response given or relating, referring or concerning said subject-matter in any way, and (iii) all relevant or material dates and time periods, including specifying the way in which said dates or time periods are pertinent and relate to the subject-matter described

       H.     The word "employee" shall mean any current or former employee, manager, owner, or elected or appointed official of Defendants.

       I.     The word "Tartarone" means present or former Company employee, Maria Tartarone who is who is referenced in the Charge and/or the Complaint.

       J.     The word "Cotton" means present or former Company employee, Kyoto Cotton, who is referenced in the Charge and the Complaint.

K.     The word "Cancellieri" means present or former Company employee, Robert Cancellieri, who is referenced in the Charge and the Complaint.

L.     The word "Ben-Ari" means present or former Company employee, Joseph Ben-Ari, who is named as a Defendant in the Complaint.

M.     The phrase "involuntary termination" means a lay-off, termination, indefinite suspension, firing, or any other involuntary cessation of employment, including, but not limited to, a resignation that occurred where the individual would have been laid-off, terminated, indefinitely suspended, or fired if they had not resigned.

N.     The word "Einstein" means Defendant, Albert Einstein College of Medicine, who is named as a Respondent in the Charge and a Defendant in the Complaint.

O.     The word "Company" means the entity or entities that employed Ms. Cintron from October 2019 until her termination in January 2020, and includes, but is not limited to, Defendant Albert Einstein College of Medicine.

P.     The word "individual" shall mean any person or entity, whether or not an employee of the Company.

Q.     The words "identify," "identity," and "state the identity" when referring to a natural person, means to state or describe each natural person's full name, age, present or last known address, present or last known telephone number, and present or last known employer, and present or last known job title (if known).

5

R.     The words "identify," "identity," and "state the identity" when referring to a non-natural person, such as a partnership, firm, association, corporation, governmental entity, or other legal, government, or business entity means to state or describe its full name, the location of its principal office, and the state under which the non-natural person is incorporated or otherwise exists.

S.     The words "identify," "identity," and "state the identity" when referring to a document means to state the type of document, the identity of its author(s), the sender of the document (if sent), the recipients of the document (if sent), the present location of the document, and a description of the subject matter of the document.

T.     The phrase "Position Statement" means the Company's position statement filed with the NYCCHR in or around March 2021 in response to the Charge.

U.     The word "replace" means the performance of, or assumption of responsibility for, any portion of a terminated employee's prior job responsibilities, duties, or work, whether on a formal or informal, temporary or permanent, basis.

V.     The words "you" and "your" means Defendants, including any and all of Defendants' employees and agents, and includes, but is not limited to, the individual(s) answering these interrogatories on behalf of Defendants.

W.     The words "document" and "documents" means, without limitation, the original and all copies, prior drafts and translations of any information in any written, typed, electronic, printed, recorded, or graphic form, however produced or reproduced, of any type or description, regardless of origin or location, including without limitation all correspondence,

6

email, texts, faxes, instant messages, records, tables, data, charts, analyses, graphs, schedules,

reports, memoranda, notes, lists, calendar and diary entries, letters (sent or received), telegrams,

telexes, messages (including, but not limited to reports of telephone conversations and

conferences), studies, books, periodicals, magazines, booklets, circulars, bulletins, instructions,

papers, files, minutes, other communications (including, but not limited to, inter- and intra-

office communications), questionnaires, contracts, memoranda of agreements, assignments,

licenses, ledgers, books or statements of account, orders, invoices, statements, bills, checks,

vouchers, notebooks, receipts, acknowledgments, data processing cards, computer disc,

computer tape, other computer generated matter, microfiche, microfilm, photographs, motion

pictures, videotapes, photographic negatives, phonograph records, tape recordings, wire

recordings, other mechanical recordings, transcripts or logs of any such recordings, all other

data compilations from which information can be obtained, or translated if necessary, and any

other tangible or intangible thing of a similar nature.

   X. The phrases "<u>state the basis</u>" and "<u>state all facts</u>" mean to provide a

substantial summary of the factual basis supporting the identified claim, allegation, or defense,

including by (i) <u>identifying</u> and describing the essential acts or failures to act forming the

substance of the claim, allegation, or defense; (ii) <u>identifying</u> the persons (natural and/or non-

natural) that, through firsthand information or through the possession of <u>documents</u>, are the

sources of the answering party's information regarding the claim, allegation, or defense, and

(iii) when one or more <u>documents</u> are the basis of the claim, allegation, or defense, <u>identifying</u>

each such <u>document</u>.

   Y. The phrase "<u>protected concerns</u>" means any <u>concern</u> that <u>relates to</u> bias,

harassment, and/or discrimination based on age, race, color, disability, national origin, sex,

sexual orientation, religion, or any other protected category as defined under state or federal law.

Z.     The words "condition" and "conditions" mean (i) any disability(ies), physical or mental impairment(s), any medical condition(s), any illness(es), any sickness(es), any disease(s), and/or any medical treatment(s) or procedure(s); (ii) a record of any such disability(ies), physical or mental impairment(s), medical condition(s), illness(es), sickness(es), diseases, and/or medical treatment(s) or procedure(s); (iii) being regarded as having any such disability(ies), physical or mental impairment(s), medical condition(s), illness(es), sickness(es), disease(s), and/or medical treatment(s) or procedure(s); and/or, (iv) any condition(s) requiring medical treatment (including surgery).  The word "condition" includes, but is not limited to, any disabilities, physical or mental impairments, conditions, illnesses, diseases, or other medical conditions that are alleged in the Complaint or the Charge to have been disabilities (including, but not limited to, the Plaintiff's Systemic Lupus Erythematosus ("Lupus"), Fibromyalgia, and chronic blepharospasms), regardless of whether Defendants agree that these conditions are legally considered disabilities under state and federal law.

## TOPICS

Pursuant to the rules, procedures, and obligations of the Federal Rule of Civil Procedure 30(b)(6), the Defendant shall identify, designate, and produce for deposition one or more officers, directors, managing agents or other person(s) most knowledgeable to testify on Defendants' behalf regarding the subject matter of the following categories:

1.     The Company's policies and procedures for employees reporting employment-related concerns. *[**Note***: based on Defendants' 1.21.22 correspondence containing objections, Plaintiff is willing to voluntarily limit the scope of this topic to Company policies and procedures*

8

for *employees* reporting *concerns* of disability discrimination, retaliation, and improper failure to accommodate in effect during *Ms. Cintron's* employment].

2. The *Company's* policies and procedures for investigating employment-related concerns. *[**Note**: based on Defendants' 1.21.22 correspondence containing objections, Plaintiff is willing to voluntarily limit the scope of this topic to *Company* policies and procedures for investigating *concerns* of disability discrimination, retaliation, and improper failure to accommodate in effect from January 9, 2017 to present].*

3. The measures taken to investigate or respond to all employment-related concerns and complaints expressed by Ms. Cintron, including, but not limited to, concerns relating to unfair treatment, performance review(s), discrimination, retaliation, disability discrimination, including requests for reasonable accommodations for Ms. Cintron's disability.

4. The Company's usual procedures or process for investigating suspected wrongdoing, misconduct, or poor performance by an employee, including, but not limited to, who oversees and authorizes the investigation, how an investigation is conducted, who conducts investigations, whether progressive discipline is typically implemented, and who approves the outcome of any investigation (such as the decision to issue formal or informal discipline or to terminate). *[**Note**: based on Defendants' 1.21.22 correspondence containing objections, Plaintiff is willing to voluntarily limit the scope of this topic to the *Company's* usual policies and procedures for investigating performance or conduct issues that *Defendants* claim caused *Plaintiff's* termination (including but not limited to any: (i) interpersonal issues with other employees or supervisors, (ii) taking personal phone calls at work, (iii) unexcused absences, or (iv) failing to complete tasks, assignments, or work) and for any *employee* with a rank of manager, supervisor, or higher, who (a) reported directly or indirectly (i.e. within the chain of*

*command under) to any of the relevant decisionmakers, or who were within a department for which any of the relevant decisionmakers provided human resources support and limited to a timeframe of January 9, 2017 to present. For the absence of doubt, this topic includes <u>identifying the employee(s)</u> who typically oversee and authorize investigations, how an investigation is typically conducted, who conducts the investigation, whether progressive discipline is typically implemented and in what circumstances, and who approves the outcome of any investigation (such as the decision to issue formal or informal discipline or to terminate)].*

*[<u>**Note**</u>: based on Defendants' 4.15.22 correspondence containing objections, Plaintiff is willing to further voluntarily limit the scope of this topic further to the <u>Company's</u> usual policies and procedures for investigating performance or conduct issues that <u>Defendants</u> claim caused <u>Plaintiff's</u> termination (including but not limited to any: (i) interpersonal issues with other employees or supervisors, (ii) taking personal phone calls at work, (iii) unexcused absences, or (iv) failing to complete tasks, assignments, or work) and for any non-union <u>employee</u> with a rank of manager, supervisor, or higher who reported directly or indirectly (i.e. within the chain of command under) to <u>Ben-Ari</u> in the facilities department and/or who were under the oversight of or were provided human resources support by <u>Cancellieri</u> and limited to a timeframe of January 9, 2017 to present. For the absence of doubt, this topic includes <u>identifying</u> the <u>employee(s)</u> who typically oversee and authorize investigations, how an investigation is typically conducted, who conducts the investigation, whether progressive discipline is typically implemented and in what circumstances, and who approves the outcome of any investigation (such as the decision to issue formal or informal discipline or to terminate)].*

- *[<u>**5-19-22, Note**</u>: The Plaintiff is willing to voluntarily limit this topic to the following: The <u>Company's</u> usual policies and procedures for investigating performance or conduct issues that <u>Defendants</u> claim caused <u>Plaintiff's</u> termination (including (i) interpersonal issues with other employees or supervisors, (ii) taking personal phone calls at work, (iii)*

*unexcused absences, or (iv) failing to complete tasks, assignments, or work) and for any (i) employee with the "administrator" job title; and (ii) employee who reported directly or indirectly (i.e. within the chain of command under) to Ben-Ari in the facilities department and limited to a timeframe of January 9, 2017 to present. For the absence of doubt, this topic includes identifying the employee(s) who typically oversee and authorize investigations, how an investigation is typically conducted, who conducts the investigation, whether progressive discipline is typically implemented and in what circumstances, and who approves the outcome of any investigation (such as the decision to issue formal or informal discipline or to terminate)].*

     5.     The Company's usual procedure and process for implementing and utilizing standard performance management procedures, including a progressive discipline policy, performance reviews, performance improvement plan, suspension, and/or termination, including, but not limited to, who oversees and authorizes the performance management, how the performance management procedures are implemented, who authorizes, approves, and issues any of the performance management procedural steps, the typical situation in which the Company would utilize various respective performance management procedures, and who approves the outcome of any performance management procedures (such as the decision to issue formal or informal discipline or to terminate).  [**_Note_**_: based on Defendants' 1.21.22 correspondence containing objections, Plaintiff is willing to voluntarily limit the scope of this topic to the Company's usual policies and procedures for implementing and utilizing standard performance management procedures and for any employee with a rank of manager, supervisor, or higher, who reported directly or indirectly (i.e. within the chain of command under) to any of the relevant decisionmakers, or who were within a department for which any of the relevant decisionmakers provided human resources support and limited to a timeframe of January 9, 2017 to present. For the absence of doubt, this topic includes identifying the employee(s) who typically oversee, authorize, and issue any performance management steps, the typical situations in which the Company would utilize various respective performance management procedures,_

11

*and who approves the outcome of any performance management procedures (such as the decision to issue formal or informal discipline or to terminate)].*

*[**Note**: based on Defendants' 4.15.22 correspondence containing objections, Plaintiff is willing to further voluntarily limit the scope of this topic to the <u>Company's</u> usual policies and procedures for implementing and utilizing standard performance management procedures and for any non-union <u>employee</u> with a rank of manager, supervisor, or higher who reported directly or indirectly (i.e. within the chain of command under) to <u>Ben-Ari</u> in the facilities department and/or who were under the oversight of or were provided human resources support by <u>Cancellieri</u> and limited to a timeframe of January 9, 2017 to present. For the absence of doubt, this topic includes <u>identifying</u> the <u>employee(s)</u> who typically oversee, authorize, and issue any performance management steps, the typical situations in which the <u>Company</u> would utilize various respective performance management procedures, and who approves the outcome of any performance management procedures (such as the decision to issue formal or informal discipline or to terminate)].*

- *[**5-19-22, Note**: The Plaintiff is willing to voluntarily limit this topic to the following: <u>Company's</u> usual policies and procedures for implementing and utilizing standard performance management procedures for any (i) <u>employee</u> with the "administrator" job title; and (ii) <u>employee</u> who reported directly or indirectly (i.e. within the chain of command under) to <u>Ben-Ari</u> in the facilities department and limited to a timeframe of January 9, 2017 to present. For the absence of doubt, this topic includes <u>identifying</u> the <u>employee(s)</u> who typically oversee and authorize investigations, how an investigation is typically conducted, who conducts the investigation, whether progressive discipline is typically implemented and in what circumstances, and who approves the outcome of any investigation (such as the decision to issue formal or informal discipline or to terminate). For the absence of doubt, this topic includes <u>identifying</u> the <u>employee(s)</u> who typically oversee, authorize, and issue any performance management steps, the typical situations in which the <u>Company</u> would utilize various respective performance management procedures, and who approves the outcome of any performance management procedures (such as the decision to issue formal or informal discipline or to terminate)].*

6.      Ms. Cintron's performance at the Company and any concerns relating to any aspect of Ms. Cintron's job performance or conduct (including any alleged poor performance, misconduct, alleged interpersonal issues with other employees, alleged interpersonal issues with a supervisor, allegedly taking personal phone calls at work, alleged unexcused absences, and/or allegedly failing to complete tasks, assignments, or work, or violation of Company policies) that the Company believed to exist during Ms. Cintron's employment.

7.      Ms. Cintron's termination, the reasons and justification for Ms. Cintron's termination, and the identity of any individuals who participated in and were involved with Ms. Cintron's termination, including, but not limited to, by providing information, input, recommendations, or making decisions related to this termination.

8.      The job duties, expectations, performance requirements, and essential functions for Ms. Cintron's position, Office Manager, at the Company and whether Ms. Cintron was meeting all of these expectations.

9.      Any employee of Defendant who was accused of, suspected of, investigated for, counseled, disciplined, and/or terminated due to, in whole or in part, any of the concerns responsive to Topic 6 from January 2015 to present. *[Note: based on Defendants' 1.21.22 correspondence containing objections, Plaintiff is willing to voluntarily limit the scope of this topic to any employee with a rank of manager, supervisor, or higher, who (a) reported directly or indirectly (i.e. within the chain of command under) to any of the relevant decisionmakers, or who were within a department for which any of the relevant decisionmakers provided human resources support and who (b) was accused of, suspected of, investigated for, or received any discipline, warning, other personnel file documentation, performance improvement plan (or similar performance management plan), or performance evaluation rating below a fully*

13

*satisfactory level, which referenced, or was caused in whole or in part by, any of the performance or conduct issues addressed in Topic 6 or that <u>Defendants</u> claim caused <u>Plaintiff's</u> termination (including but not limited to any: (i) interpersonal issues with other employees or supervisors, (ii) taking personal phone calls at work, (iii) unexcused absences, or (iv) failing to complete tasks, assignments, or work) and limited to a timeframe of January 9, 2017 to present].*

*[<u>**Note**</u>: based on Defendants' 4.15.22 correspondence containing objections, Plaintiff is willing to further voluntarily limit the scope of this topic to any non-union <u>employee</u> with a rank of manager, supervisor, or higher who reported directly or indirectly (i.e. within the chain of command under) to <u>Ben-Ari</u> in the facilities department and/or who were under the oversight of or were provided human resources support by <u>Cancellieri</u> and who (b) was accused of, suspected of, investigated for, or received any discipline, warning, other personnel file documentation, performance improvement plan (or similar performance management plan), or performance evaluation rating below a fully satisfactory level, which referenced, or was caused in whole or in part by, any of the performance or conduct issues addressed in Topic 6 or that <u>Defendants</u> claim caused <u>Plaintiff's</u> termination (including but not limited to any: (i) interpersonal issues with other employees or supervisors, (ii) taking personal phone calls at work, (iii) unexcused absences, or (iv) failing to complete tasks, assignments, or work) and limited to a timeframe of January 9, 2017 to present].*

- *[<u>**5-19-22, Note**</u>: The Plaintiff is willing to voluntarily limit this topic to the following: Any (A) (i) <u>employee</u> with the "administrator" job title; and (ii) <u>employee</u> who reported directly or indirectly (i.e. within the chain of command under) to <u>Ben-Ari</u> in the facilities department; and (B) who was counseled, disciplined, or reprimanded in written form for performance or conduct issues that <u>Defendants</u> claim caused <u>Plaintiff's</u> termination (including (i) interpersonal issues with other employees or supervisors, (ii) taking personal phone calls at work, (iii) unexcused absences, or (iv) failing to complete tasks, assignments, or work - limited to a timeframe of January 9, 2017 to present.*

10.   The <u>Company's</u> goals, expectations, and performance for and/or <u>individuals</u> who held a similar role as <u>Ms. Cintron</u> at the <u>Company</u> and whether each of these <u>individuals</u> were meeting their goals and expectations from January 2015 to present.

- *[__5-19-22, Note__: The Plaintiff is willing to voluntarily limit this topic to the following: The <u>Company's</u> goals, expectations, and performance for (i) <u>employees</u> with the "administrator" job title; and (ii) <u>employees</u> who reported directly or indirectly (i.e. within the chain of command under) to <u>Ben-Ari</u> in the facilities department and whether each of these individuals were meeting their goals and expectations from timeframe of January 9, 2017 to present.*

11.   All instances in which any <u>employee</u> was investigated, counseled, and/or disciplined, in whole or in part, for failing to meet the goals and expectations of an Office Manager or similar position from January 2015 to present, including whether that <u>employee</u> was issued discipline, whether that <u>employee</u> still works for <u>Defendant</u>, and if not the reason that <u>employee</u> no longer works for <u>Defendant</u>. *[__Note__: based on Defendants' 1.21.22 correspondence containing objections, Plaintiff is willing to voluntarily limit the scope of this topic to any <u>employee</u> with a rank of manager, supervisor, or higher, who (a) reported directly or indirectly (i.e. within the chain of command under) to any of the relevant decisionmakers, or who were within a department for which any of the relevant decisionmakers provided human resources support and who (b) was accused of, suspected of, investigated for, or received any discipline, warning, other personnel file documentation, performance improvement plan (or similar performance management plan), or performance evaluation rating below a fully satisfactory level, which referenced, or was caused in whole or in part by, any of the performance or conduct issues that <u>Defendants</u> claim caused <u>Plaintiff's</u> termination (including but not limited to any: (i) interpersonal issues with other employees or supervisors, (ii) taking personal phone calls at work, (iii) unexcused absences, or (iv) failing to complete tasks, assignments, or work) and limited to a timeframe of January 9, 2017 to present].*

15

*[**Note**: based on Defendants' 4.15.22 correspondence containing objections, Plaintiff is willing to further voluntarily limit the scope of this topic to any non-union employee with a rank of manager, supervisor, or higher, who (a) reported directly or indirectly (i.e. within the chain of command under) to Ben-Ari in the facilities department and/or who were under the oversight of or were provided human resources support by Cancellieri and who (b) was accused of, suspected of, investigated for, or received any discipline, warning, other personnel file documentation, performance improvement plan (or similar performance management plan), or performance evaluation rating below a fully satisfactory level, which referenced, or was caused in whole or in part by, any of the performance or conduct issues that Defendants claim caused Plaintiff's termination (including but not limited to any: (i) interpersonal issues with other employees or supervisors, (ii) taking personal phone calls at work, (iii) unexcused absences, or (iv) failing to complete tasks, assignments, or work) and limited to a timeframe of January 9, 2017 to present].*

- *[**5-19-22, Note**: The Plaintiff is willing to voluntarily limit this topic to the following: All instances in which any (i) employee with the "administrator" job title; and (ii) employee who reported directly or indirectly (i.e. within the chain of command under) to Ben-Ari in the facilities department; were failing to meet the goals and expectations of their job position from timeframe of January 9, 2017 to present, including whether that employee was issued discipline, whether that employee still works for Defendants, and if not, the reason that employee no longer works for Defendants.*

12.     The instances in which Ms. Cintron or any other individual (including, but not limited to, an employee, any medical provider, or any other individual) disclosed any condition(s) (including the conditions set forth in the Complaint and the Charge) to the Company, including within an note, document, paperwork or form, voice message, or in any other manner, including (i) the condition(s) disclosed, (ii) the date the conditions were disclosed, (iii) the identity of the individual(s), who disclosed the condition(s), and, (iv) the identity of the

16

individual(s) to whom the condition(s) were disclosed. *[**Note**: based on Defendants' 1.21.22 correspondence containing objections, Plaintiff is willing to voluntarily limit this topic to instances specific to Ms. Cintron's disability and any subsequent discussions, communications, or disclosures (including, but not limited to, internal meetings or discussions, verbal or written communications, or emails, regardless of whether or not Ms. Cintron was present or included in said communications) of Ms. Cintron's disability during Ms. Cintron's employment until the date the Charge of Discrimination was filed, 6/22/2020].*

*[**Note**: based on Defendants' 4.15.22 correspondence containing objections, Plaintiff is willing to further voluntarily limit this topic to instances specific to Ms. Cintron's disability and any subsequent discussions, communications, or disclosures (including, but not limited to, internal meetings or discussions, verbal or written communications, or emails, regardless of whether or not Ms. Cintron was present or included in said communications) of Ms. Cintron's disability by relevant decisionmakers (Ben-Ari, Tartarone, and Cancellieri) during Ms. Cintron's employment and until the date the Charge of Discrimination was filed, 6/22/2020].*

13.    The efforts taken by the Company (including Tartarone, Cotton, Ben-Ari, Cancellieri, and/or any employees of the Company) to engage in an interactive dialogue with Ms. Cintron related to any condition, request for, and/or need for reasonable accommodation, including, but not limited to, any requests for protected leave, time off to attend medical appointments and/or time off to treat her condition(s), or any other reasonable accommodations outlined in the Complaint, including, but not limited to, (i) the identity of any individuals involved in such efforts, (ii) the date(s) of the efforts, (iii) a description of the efforts, (iv) the identity of all documents related to such efforts, (v) any conclusions reached as a result of the efforts, including whether or not to grant a reasonable accommodation; (vi) any alternative

accommodations considered; and (vii) any actions taken by the <u>Company</u> as a result of such efforts.

14. The procedures, guidelines, and policies <u>related</u> to employees requesting reasonable accommodations and for engaging an <u>employee</u> in an interactive dialogue once that <u>employee</u> has disclosed that he/she suffers from one or more disabilities and/or have asked for an accommodation.

15. The measures taken by <u>Defendant</u> to search for and retrieve <u>documents</u> and ESI pursuant to the <u>Plaintiff's</u> document requests, including but not limited to, the email accounts searched, how such search was conducted (including search terms utilized), who performed the search, and the method of determining (including who determined) whether <u>documents</u> (including emails) should be produced.

16. The measures taken by <u>Defendant</u> to preserve relevant <u>documents</u> (including preventing deletion of emails and electronic data) once <u>Defendant</u> learned that litigation in this matter was likely, including the content and recipients of any litigation hold notices, any measures taken (including by an in-house or external IT function) to preserve, copy, or prevent the deletion of emails and/or ESI, the dates of any such notices/measures, and what measures were taken to confirm that any preservation measures were being successfully implemented and/or complied with by all relevant <u>individuals</u>.

17. What email custodian accounts were in the possession custody or control of <u>Defendants</u> at any time after January 9, 2020.

18. Whether any <u>documents</u> (including emails) were or could have been lost (through deletion or otherwise) before June 22, 2020 (the date the <u>Charge</u> was filed) that may have contained relevant material including the reason for the loss, and any available methods of

18

retrieving these <u>documents</u> including any ability to access, restore, or obtain from servers, back-up tapes, or a third party including what measures were taken to assess whether the accounts could be accessed through alternative means, and the potential or actual loss (through deletion or otherwise) of any potentially relevant <u>documents</u> (including emails) after June 22, 2020 (the date the <u>Charge</u> was filed) including the date of the loss, the date of the discovery of the loss, the reason for the loss, and any available methods of retrieving these <u>documents</u> including any ability to access, restore, or obtain from servers, back-up tapes, or a third party including what measures were taken to assess whether the accounts could be accessed through alternative means.

19.    How emails are kept in the normal course of business at <u>Defendants</u> at all times from January 9, 2020 to present including whether information is backed up and if so where that information is stored.

20.    The usual policy <u>related to</u> email retention or lack of retention when an <u>employee</u> leaves their employment at <u>Defendant</u>, including what happens to that <u>employee's</u> email account, if that <u>employee's</u> email account is deleted the usual timeframes on deletion, and whether any backups of the account are saved.

21.    The <u>documents</u> produced by the <u>Defendants</u> in Response to the Document Requests served by the <u>Plaintiff</u> on the <u>Defendants</u> in this matter, including, but not limited to, those documents identified as Bates Nos. Einstein000001-Einstein000545 and any documents produced thereafter, and whether (i) the <u>documents</u> are true and authentic copies of the genuine original <u>documents</u>; (ii) were made by a person with knowledge of the activity to which the <u>documents</u> pertain or were made from information transmitted by a person with knowledge of the activity to which the <u>documents</u> pertain; (iii) were prepared and kept by <u>Defendants</u> in the

19

course of regularly conducted activity of a business, organization, occupation, or calling; (iv) were made in the regular practice of the activity to which the <u>documents</u> pertain, and (v) the author and/or recipients of any <u>documents</u> for which the author and/or recipients are not otherwise obvious on the face of the <u>document</u>.

22.     The <u>Company's</u> policies, practices, and procedures for disciplining and terminating an <u>employee</u>.

23.     The <u>Company's</u> policies, practices, and procedures for complying with/following discrimination laws and regarding discrimination generally (including disability discrimination). *[**<u>Note</u>**: based on Defendants' 1.21.22 correspondence containing objections, Plaintiff is willing to voluntarily limit the scope of this topic to <u>Company</u> policies, practices, and procedures for complying with and following disability discrimination laws during <u>Ms. Cintron's</u> employment].*

24.     The <u>Company's</u> policies, practices, and procedures regarding investigating reports of disability discrimination and retaliation and all <u>concerns</u> of disability discrimination and retaliation that have been raised and investigated by the <u>Company</u> from January 2015 to present. *[**<u>Note</u>**: based on Defendants' 1.21.22 correspondence containing objections, Plaintiff is willing to voluntarily limit the scope of this topic to any <u>employee</u> with a rank of manager, supervisor, or higher, who (a) reported directly or indirectly (i.e. within the chain of command under) to any of the relevant decisionmakers, or who were within a department for which any of the relevant decisionmakers provided human resources support; and (b) raised <u>concerns</u> of disability discrimination or retaliation limited to a timeframe of January 9, 2017 to present and the <u>Company's</u> subsequent investigation into those <u>concerns</u>].*
*[**<u>Note</u>**: based on Defendants' 4.15.22 correspondence containing objections, Plaintiff is willing to voluntarily limit the scope of this topic to any non-union <u>employee</u> with a rank of manager,*

supervisor, or higher, who (a) reported directly or indirectly (i.e. within the chain of command under) to <u>Ben-Ari</u> in the facilities department, and/or who were under the oversight of or were provided human resources support by <u>Cancellieri</u>, and (b) raised <u>concerns</u> of disability discrimination or retaliation limited to a timeframe of January 9, 2017 to present and the <u>Company's</u> subsequent investigation into those <u>concerns</u>].

- *[**5-19-22, Note**: The Plaintiff is willing to voluntarily limit this topic to the following: The <u>Company's</u> policies, practices, and procedures regarding investigating reports of disability discrimination and retaliation and all concerns of disability discrimination and retaliation that have been raised by (i) <u>employees</u> with the "administrator" job title; and (ii) <u>employees</u> who reported directly or indirectly (i.e. within the chain of command under) to <u>Ben-Ari</u> in the facilities department - limited to a timeframe of January 9, 2017 to present and the <u>Company's</u> subsequent investigation into those <u>concerns</u>]*

25.     The <u>Company's</u> affirmative defenses. *[**Note**: based on Defendants' 1.21.22 correspondence containing objections, Plaintiff is willing to voluntarily withdraw this topic].*

26.     The allegations in the <u>Complaint</u>. *[**Note**: based on Defendants' 1.21.22 correspondence containing objections, Plaintiff is willing to voluntarily withdraw this topic].*

Date:   May 19, 2022             By:   _____

Benjamin J. Wyatt, (#5604590)
BWyatt@Wyattlegalservices.com

Michael R. Varraso (#5619291)
MVarraso@Wyattlegalservices.com

Katherine A. Gabriel (#5782487)
Katherine@Wyattlegalservices.com

The Law Offices of Wyatt & Associates, P.L.L.C.
17 Elm Street, Suite C211
Keene, NH 03431
Telephone: (603) 357-1111
Facsimile: (603) 685-2868

New York Office:
418 Broadway, 2nd Floor
Albany, NY 12207
Telephone: (603) 357-1111
Facsimile: (603) 685-2868

### CERTIFICATE OF SERVICE

I, Katherine Gabriel, hereby certify that I have caused the foregoing document to be served upon Counsel for the Defendants, Helene R. Hechtkopf (hhechtkopf@hnrklaw.com) and
   Fiona Carmody (fcarmody@hnrklaw.com) on this 19th day of May 2022 via electronic mail.

_/s/ Katherine Gabriel /_
Katherine A. Gabriel

# EXHIBIT B

# Einstein Facilities Management/Engineering Organization Chart
## 4/3/2019



| | Occupied Positions | Vacant Positions | Total |
|---|---|---|---|
| Non-Exempt Personel | 69 | 17 | 86 |
| Exempt Personel | 16 | 4 | 20 |
| Total | 85 | 21 | 106 |

Note-123 positions budgeted in FY15,106 positions budgeted in FY19 & 50K casual staff
Note - This does not include 5 Grounds personel
Note- Does not include casual positions
Note-Assistant Supervisor is currently supported by the Grade 8 position

Einstein000549



# Einstein Facilities Management/Engineering Organization Chart
## 10/5/2020

Einstein000553